Chief Justice Robertson
did not sit in this case : Judge Nicholas delivered the Opinion of the Court.
This suit in chancery was instituted by the appellants, in 1815, for the recovery of a large tract of land, by virtue of an entry made in 1782, the defendants holding under elder patents from Virginia, but their entries being either junior, or, as alleged, vague and illegal, or improperly surveyed.
.The defendants, in their answers, set,up and relied upon an adversary possession of more thdn twenty years before the institution of the suit. After depositions had been taken proving such possession, as to the whole or nearly the whole of the defendants, at the September term^ 1819, the following order was entered:—
“This day came the parties by their counsel, and by their consent, the agreement heretofore entered into for giving Robert P. Letcher notice, is set aside, and the complainant Todd is to be notified for all the complainants, and the defendant Wheeler for all the defendants. The defendants waive so much of their answers as relates to the statute of limitations, and the complainants waive the right to remove this cause to the federal court.55
In 1825, the defendants moved to set aside so much of the order as purports to waive the benefit of the statute of limitations, and they were told by the judge then presiding to get ready on that point, and he would consider and dispose of it on the final hearing. This mo *402 tion, however, or any oider concerning it, does not appear to have been entered of record.
Givcuit courts have a great discretion in regulating the intermediate steps of a suit -which, unless for obvious abuse, this court will not curtail or control.
Where there has been an unusu-at delay in presenting a preparatory motion, and it appears the mover has lain by, to catch an undue advantage, he should not be heard.
*402 At the June term, 182T, the defendants filed affidavits, stating that the- order of September, 1819, had been entered by permission oí one of their attorneys, without their knowledge, consent or approbation; and thereupon, at their instance, a rule was made upon the complainants, to show cause, by the next term, why so much of said order as relates to a waiver of the statute should not be set aside. Without any direct action upon this rule, the cause was finally heard., at the next term, and by the final decree, it was ordered “that the agreement on record, purporting for the defendants a waiver of the lapse of time in their favor, be set aside and held for naught, ” and the bill was dismissed with costs.
It does not -appear, that any of the defendants were in court when the agreement of 1819 was entered of record, or that any of them had assented thereto previous to its being ma^te. It is proved, however, that during the same ternvqnd perhaps-the next day, Wheeler the principal defendant, and who acted as agent for the rest, was apprized of it, and it is but a .just inference, that all the others were also apprized of it, shortly thereafter, or at least years before any motion was made to set it aside. It is inferrable from the declarations of Wheeler, proved by complainants, that he was dissatisfied with what had been done by his attorney, but that either from a belief that the cause could have l een removed to ¡he federal court, or that after the agreement had been entered of record, it was no longer in his power to have it set aside, he made no effort to have it done, until the motion of 1825.
' The circuit courts have necessarily great discretion confided to them, in regulating all the intermediate steps of a suit prepartory to a final trial. It is a discretion which this court has never atttempted to curtail or control, except for an obvious abuse of it. That the time elapsed between the recording of the agreement, and the application to set it aside was most unreasonably long, cannot well be denied. Jf there were any room to suspect a lying in wait to catch an undue advantage, it would con- *403 siitute an insurmountable objection of itself, to even an investigation of the claim to have it set aside.- But the, e is no room for any such surmise. The proof of length of possession, as to most, if not all the defendants, was already made before the agreement, and as the bur-then of it lay on them, there was reason for their expediting rather than retarding its production. There was no attempt on the part of defendants, to impeach the motives of their attorney, or surmise that he had not acted as he supposed for the best, and if there had been, the length of their acquiescence should estop- them- on that, score. Agreements between parties are frequently indispensable to the cheap and expeditious preparation of causes. Good faith in their execution should be required by the circuit courts, nor should a violation of them be allowed on any light or trivial grounds. It should never be allowed, when it is likely to work any ascertainable prejudice to the party opposing it, and which has been su-perinduced by the entering into- the agreement.
Agreements as-to tire preparation of causes, should be fairly observed, and should not he rescinded,by the court, where the opposing party will beprejudic-ed by having made the agreement unless it is adhered to.
Great latitude ia. allowed, both in chancery and at law, in making amendments, §■ correcting errors ; and v; hile the matter remains under the control of the court, it is not to be tolerated that a party shall lose his property, by the. cunning and adroitness of parties or lawyers, oh the one hand, or their mistakes or inad-vertencies, on the other:
On the other hand, we have no idea a court of justice should ever allow itself to be be debased into a tribunal for meting out justice to litigants, according to the superior address and management of themselves or their attorneys, instead of the substantial merits of their cases. Some members of the profession are apt to conceive an advantage gained over an adversary by their superior adroitness, or his want of proper skill, as a species of acquisition both lawful and honorable — a kind of property — a spoil of war, they have won for their clients, axid over which the court, as the arbiter of the lists, has no power of restitution. The courts are constantly compelled to he reminding them that they are the supervisors of no such arbitraments. It ought to have been long since understood, from the course of decision in this court, that the slip, oversight or blunder of an attorney, constitutes no cause of forfeiture of the property of the client, whilst it is still in the power of the court to allow a correction of the error without substantial prejudice -to the other party. It is every days practice, even in our common law courts, to per *404 mit parties to amend and re-ámend their pleadings, s© long as it is necessary to the purposes of juslice, until the cause is finally disposed of. 1 his is allowed even for the perfecting of a plea of the statute of limitations, the idea of its being an odious defence having been long since exploded. Nothing is more common than to allow the withdrawal of a plea, and even after issue baa been formed at one term, to allow a new issue to be presented, by an entire new plea at a subsequent term-All this, it is true, tends to great laxity of practice, and induces much trouble to the courts; but the power to allow such things to be done is indispensable to the administration of justice; the prevention of its abuse, is properly confided to the exercise of a sound discretion on the part of the courts of original jurisdiction. This court has often reversed for refusing leave to amend, seldom or never for allowing it.
We do not doubt, that it is within the discretion of a circuit court, to allow an amended answer to be filed, for the purpose of setting up the statute of limitations. But after that defence, or any other, has once been regularly made, and then voluntarily waived or withdrawn, it would be an indulgence savouring strongly of an abuse of discretion, if it were again allowed to be renewed, unless some strong reason was presented for so doing. It perhaps could never be properly done where the waiver was the result of a mutual agreement fairly made, and was based upon any thing like a consideration of benefit to the party waiving, or of prejudice to his adversary.
The principal question therefore is, whether this discretion has been so abused in this case, as to require a reversal on that ground.
It is obvious from the tenor and nature of the agreement of 1819, that the waiver of the statute of limitations, and the right to remove the cause to the federal court, wei*e the considerations and inducements, the one of the other. But the complainants have left no room for doubt on this subject, by proving such to have been the fact. What the defendants surreudered was a defence perfectly *405 impregnable, and that secured to them their homes against the claim of the complainants. It was a certain delence, based upon proof then made. On the other hand, the complainants surrendered nothing of the least benefit to them, or prejudice to the defendants. It was the waiver of a right that did not exist. The complainants themselves, as well as ihe defendants, were citizens of Kentucky, and they had no right or power to remove the cause to the federal court. On the one side, then, the defendants gave seventeen hundred acres of valuable land ; on the other the, complainants gave nothing, which una-yoidably presents the subject in one of two aspects. The agreement was either the result of a mutual mistake as to the power of removal, both parties supposing it to exist; or the complainants were taking a most unconscionable advantage of the ignorance of their adversaries. It is unnecessary to suppose the defendants were the dupes of any artifice or management. When, then, the defendants asked leave so to amend their pleadings as to set up and rely upon the statute of limitations in their defence, and the complainants presented such an agreement as a bar to their right of so doing, did the court abuse its discretion in refusing to enforce an agreement so unfair, so unequal, so unconscionable? Was such an agreement ever enforced in any court of justice, in any way, or for any purpose? Did the chancellor ever refuse to rescind such a one? We conceive not. The complainants can be no way prejudiced thereby — that is, their situation is no worse, than if the agreement had never been made. They have lost nothing that ever was properly theirs. The on[y supposable prejudice to them, that has been suggested by counsel, is, that from the lapse of time they may have lost the witnesses, who might have disproved the proof, as to the length of possession offered by the defendants. That is too vague a surmise of possible detriment, to constitute the basis of legal action. It must assume a shape more relevant, much more impo-ing than that. The presumption is a much more rational 'one, that the lapse of time has, in the loss of witnesses, prejudiced the defendants. At any rate if the complainants wore to receive any ascertainable prejudice, it was their *406 business to have made it manifest, under the rule to show cause. This they have not clone. They have contented themselves, with proving that the agreement was entered of record with the assent of one of the attorneys, that the defendants were recently thereafter apprized of it, and rely exclusively upon their long subsequent acquiescence. That would no doubt be a strong circumstance in aid of any other. But a mere neglect to have the order set aside, superinduced, as it no doubt was, by ignorance on the part of the defendants, should not constitute a bar. There is no statutory bar, and we are no ways inclined to make one.
'Where a deft has agreed to Waive a matter of defence, and the - court sets aside and annuls the agreement, there should be no final decree 'the same'term: time should be allowed ibi preparation upon ' the issue, hich had been waived and is reinstated.
We have been induced to discuss the point at some length, not on account of any intrinsic difficulty discovered in it, but from the large amount of property dependent upon it. We entertain no doubt the court did right in setting aside the order of 18.19, and giving the defendants the benefit of their length of possession. But we think the court was premature in proceeding at the same term to a final decree. An opportunity should have been afforded the complainants, to make repellent proof as to the length of possession, and to bring their case, by allegation and proof, within any of the savings of the statute, provided they could do so. It would also have been more regular and proper, that the proof as to the possession taken by the defendants, since the order of 1819, should have been re-taken, in as much as there was, at the time of taking it, no issue involving the fact.
Decree reversed, with costs, and cause remanded for further proceedings consistent herewith.